The opinion of the Court was delivered by
Parker, J.
This was an indictment against the defendant for usury; and on the trial three points were reserved for the consideration of the Court.
1. Whether Clough, the borrower of the money loaned on usury, he never having paid the money borrowed, was a competent witness, especially being, as alleged by the defendant’s counsel, entitled to one moiety of the penalty, as prosecutor, complainant or informer.
2. Whether the penalty ever accrued, it appearing that the money loaned has not been repaid, but only sixteen dollars, which was taken for the forbearance, paid at the time of the loan.
3. Whether the evidence offered by the defendant, tending to show that he was a broker accustomed to transact business of this nature for others, and that in this particular transaction he acted for the late treasurer, Skinner, was material, and ought to have been stated to be so to the jury; Frost not professing to act [ * 56 ] for another * at the time of the loan, but conducting the business wholly as his own.
As to the first question, it is clear that Clough was not interested in the event of .this prosecution, unless entitled to a part of the penalty. He might be under an influence or bias to testify against the defendant; but that was a proper subject for the consideration of the jury, in weighing his credibility.
It is also clear that this verdict could neve’ be used as evidence *41 in any action, which might have been brought upon the note given by the witness to secure the money borrowed. Such an action would be tried on its own merits, on proper evidence, without reference to any prosecution founded on the same transaction. In Lord Holt’s time, the sufferer by a cheat was considered an incompetent witness upon the loose ground, that although the verdict in the criminal prosecution could not be received as evidence in any action upon the civil contract, yet that such verdict would be heard of, and probably influence the subsequent trial (1). But that decision, and others which followed, have been overturned, and the law in England now is, as settled in the case of Abrahams qui tam vs. Bunns (2), that the borrower is a competent witness to prove the usury, and also to prove the repayment of the money borrowed, it being then thought necessary to establish the latter fact, in order to make the witness competent.
In the case of Smith qui tam vs. Prager (3), the same point was decided by Lord Kenyon, supported by the other judges. In this case, the borrower was decided to be a competent witness, not only to prove the usurious agreement, but the repayment of the money, without which the penalty could not have accrued, there being no evidence of any sum advanced, or deducted from the sum borrowed, at the time of the loan.
*In the case of Masters qui tam vs. Drayton (4), how- [ * 57 ] ever, an opinion is given, which, although reconcilable with the letter of the foregoing decisions, seems to contravene the principles on which they are founded, viz. that the borrower, who was a bankrupt without a certificate, and who had not paid the borrowed money, was incompetent to prove usury.
Upon the true principles of the decisions in the cases of Abrahams vs. Bunns and Smith vs. Prager, viz. that the witness was not interested in the event of that suit, and that the verdict therein could not be used as evidence in an action upon the contract, it is difficult to perceive why the witness in the case of Masters vs. Dray-ton was declared to be incompetent. The reason of the opinion of the Court, as stated by the reporter, is, that the defendant might have his action against the bankrupt for the debt. But it seems to have been forgotten that it had been previously settled, that the verdict could not be used as evidence in such action. And this case, I should think, was much shaken, if not overturned, by the subsequent decision in the case of Smith vs. Prager, where the principle adopted by the Court is, that, to render the witness incompetent, the interest must be direct, and not merely consequential.
*42 And in the case at bar, we are all of opinion that Clough, the borrower of the money, was a competent witness, notwithstanding ne had never repaid the money borrowed; and we give this opinion without talcing into view the fact appearing in the report, that before this trial an action had been brought, and pursued to execution, upon the note given to secure the money loaned, so that the contract had passed in rent judicatam, and was not liable to impeach ment on the ground of usury.
Another objection to the competency of Clough is, that, [*58] as prosecutor or informer, he is entitled to receive *a moiety of the penalty in case of conviction ; and if this were true, he certainly would be directly interested in the event of this prosecution, and so ought not to have been admitted to testify.
The statute provides that the penalty shall be recovered by indictment or action of the case, one moiety thereof to the use of the Commonwealth, and the other moiety to him or them who prosecutes, complains or sues for the same. To entitle Clough to receive one moiety of this penalty, it should appear on the record, that he prosecuted, complained or sued for it. No such thing appears. That he did not prosecute or sue for it, is manifest, for the whole penalty is claimed for the Commonwealth by indictment of the grand jury. Whether he complained or informed does not appear to the Court, there being no record of any complaint or information; nor is it alleged in the indictment, that any person other than the government is interested in the penalty; so that the Court are not authorized to award any part of the penalty to Clough, nor has he any means of obtaining it.
But there is another reason, which operates conclusively against any right in Clough to the penalty, and so removes all interest from his mind. By the statute of 1788, c. 12. no person is entitled to a moiety by reason of his being a prosecutor or informer, unless the suit is brought for his use within one year after the offence committed ; and all prosecutions after one year, and within two years, are solely for the use of the government. Now, the offence, for which this penalty is demanded, is alleged and proved to have been committed on the fourteenth day of October, 1807. The bill was found by the grand jury in November, 1808 ; so that, evidently, whatever interest Clough might have had in the penalty, had he sought it seasonably, it was lost to him at the commencement of this prosecution ; and he neither could have had, nor expected any share of this penalty.
[ *59] * The second question reserved is, whether, as the sum borrowed on usury has never been paid, the penalty could have accrued. The fact is, that, at the very time of the loan, the *43 sum of sixteen dollars was paid to the defendant for the use of 200 dollars for ninety days: this, confessedly, much exceeds the legal interest. We lay out of the question the circumstance of Clough’s having been sued, judgment and execution obtained against him, and he committed to prison, and discharged on taking the poor debtor’s oath. Whether these circumstances would be considered equivalent to payment of the sum borrowed, where that might be necessary to prove the offence of usury, need not now be decided; it being very clear that the taking of the sixteen dollars as the compensation for the loan, that sum exceeding lawful interest, completed the offence of usury, whether the principal sum was ever paid or not. This point was fully and clearly established in the case of Lloyd vs. Williams (5). It is there laid down by Lord Chief Justice De Gray, with the concurrence of all the other judges, that where a sum was advanced at the time of making the loan, exceeding lawful interest, by way of compensation for forbearance, the offence was eo instante committed. The doctrine is, that when the usurious contract, the lending, and the forbearance or interest concur, the offence is committed, and the limitation runs from that time, and not from the payment of the money borrowed, to the lender.
In the case at bar, the usurious contract, the lending, the forbearance and interest received, were all on the day alleged in the indictment, and nothing was then wanting to complete the offence.
A case cited at the bar from memory, as having been decided in this Court, at Worcester, must have been misapprehended by the counsel for the defendant. It is probable, that, in that case, nothing was paid, either of * principal or interest, or, [ * 60 ] at any rate, not more than the principal and lawful interest ; and upon such facts, the court may well have decided that the offence was not committed, there having been no illegal interest actually taken; and although the contract might be void, still the penalty might not have accrued.
But in the case before us, sixteen dollars were taken at the time of the loan, expressly for the use of the money, and this sum greatly exceeded the lawful rate of interest; so that our decision will by no means interfere with that supposed to have been given in Worcester, founded upon a different state of facts.
There remains, then, but one question to discuss, which is, whether upon the facts proved in the case, it was material for the jury to consider whether the defendant transacted this usurious bargain for himself, or for Skinner, the late treasurer, as was attempted to be proved by evidence offered and received by the jury, but which the *44 judge instructed the jury they need not take the trouble to weigh and decide upon.
If the defendant had openly transacted this business in his capacity of broker, professing to act for any particular person, who had employed him, it might be material to consider how far he could shelter himself from the penalty (when he is the actual immediate offender, as well as the chief instrument, by which the offence is committed by others) by showing that another is to receive a principal part of the profit. As in misdemeanors, all concerned are principals, perhaps it would be difficult for the defendant to excuse himself by showing that another participated with him in the guilt, or the profits of the unlawful bargain.
But in this case, there is no room for this question; for the defendant professed to act on his own account, and did not pretend that he acted for another: he received the note, and caused an action to, be brought upon it without ever disclosing his [*61] connection with * Skinner, until it was thought that it would save him in this prosecution.
Under these circumstances the defendant must be taken to have acted for himself, and to be responsible for the violation of law which he has committed. There is no cause for a new trial; but judgment must be rendered upon the verdict (a).

 Rex vs. Whiting, Salk. 283.

 4 Burr. 225

 7 D. & 60.

 2 D. & E. 496.

 3 Wils. 250. — 2 W. Black. 792. S. C.

 1 Phil. Ev. 51. 7th Ed. — Spencely, q t. vs. De Willot, 7 East, 108.