State *v.* Bailey.

## THE STATE *versus* JACOB BAILEY, JR.

Where an indictment for double voting, under the statute of 1821, c. 115, regulating elections, alleges "that the inhabitants were convened according to the constitution and laws of the State in legal town meeting for the choice of town officers," it is not necessary also to allege, "that the inhabitants were summoned by warrant from the selectmen duly and legally served."

Nor is it necessary to add, that the inhabitants were assembled in town meeting to give in their votes, ballots, or lists for the persons to be voted for.

A copy of the record of the warrant for calling the town meeting, is competent evidence, without producing the original warrant, or showing its loss.

Where one voluntarily appears before the grand jury as a witness, but it does not appear of record that he was the complainant, he is not entitled to half the penalty given by the seventeenth section of that statute; and therefore is not for that cause an incompetent witness on the trial.

The offence may be committed, although the presiding officer of the meeting may not keep a check list, as the law requires; and although he may throw out the ballots after the double voting has taken place, and commence the voting again.

It is not necessary to allege in the indictment *for this offence*, that the accused was an elector entitled to vote at the meeting.

EXCEPTIONS from the Western District Court, WHITMAN J. presiding.

Bailey was indicted for voting twice for the same officers, at the same balloting, at a town meeting in Harpswell on the first Monday of March, 1841.

To prove the meeting of the inhabitants of Harpswell, alleged in the indictment, the county attorney introduced the record of the town clerk of Harpswell. The defendant's attorney moved the Court to quash the indictment as insufficient in these respects : —

1. Because it was not therein alleged that the inhabitants were summoned by warrant from the Selectmen of Harpswell duly and legally served upon said inhabitants, to meet on the 1st Monday of March, A. D. 1841, to act upon the articles specified in said warrant : —

2. Because it was not therein alleged that the said inhabitants were assembled in town meeting to give in their votes, ballots and lists for the persons to be voted for.

But the Court ruled that the indictment was not bad on this account.

The attorney for the defendant objected to the introduction of the record, as proof of the calling together and organization of the town meeting, alleged in the indictment. But the Court overruled the objection and admitted the record.

The attorney for the defendant, contended that the warrant, as appeared of record, for calling the town meeting, alleged in the indictment, not being under seal, there was no proof of the legal organization of the meeting; but the Court ruled that the warrant was good and sufficient without seals.

The county attorney then called Rufus Dunning, the moderator of the meeting, to prove the act alleged in the indictment against the defendant, of double voting. It appearing that said Dunning was the complainant, by voluntarily appearing before the grand jury as a witness, the defendant's attorney objected to his admissibility as a witness, on the ground of his being interested in the event of the prosecution, as being entitled to one half the penalty. But the Court overruled the objection, and admitted the witness to testify. Dunning testified that no check list was kept, at the time the defendant was said to have deposited two ballots, as alleged in the indictment. Thereupon the defendant's attorney objected that it was not a balloting such as is contemplated by the statute, at which the offence charged in the indictment, could be committed; but the Court overruled the objection.

Dunning testified that the defendant put in two ballots within a minute of the commencement of the balloting, at that time of balloting; and that at the time defendant put in the second ballot, there were but few ballots in the box, and that upon seeing two ballots put in by defendant, witness upset the ballot box, turned out the votes, rendering void that balloting, and began to receive the votes anew. Thereupon the defendant's counsel contended that that balloting was not a balloting such as is contemplated by statute, at which the offence charged in the indictment could be committed; but the Court ruled otherwise. Upon the aforesaid rulings and instructions

of the Court to the jury, a verdict was found against the defendant. And the defendant excepted.

Bailey also moved in arrest of judgment, because there was no allegation in the indictment, that he was an elector within the town of Harpswell.

*Haines,* for Bailey, argued in support of these objections.

The indictment is defective, because it does not allege that the meeting was summoned by a warrant from the selectmen, legally served.

It should have stated what the object of the meeting was, that the voters should carry in their votes for the persons to be voted for.

The best evidence is always required, which can be obtained. The original warrant is better evidence, than any copy of it made by a town clerk.

Dunning, the complainant, was improperly admitted as a witness. The statute is express, that the prosecutor, or complainant, shall be entitled to half the penalty. He was directly interested, as he would have been allowed half the penalty on conviction of Bailey.

The statute expressly provides, that a check list shall be kept on voting for town officers, and no one has the right to vote, until his name is found. Unless the check list is kept, the balloting is illegal. Illegal voting is no voting, and no indictment will lie.

The ballots were thrown out and destroyed by the moderator of the meeting, at the commencement, and no balloting, such as the statute contemplates, took place at the time when Bailey voted.

The indictment is bad, because it does not allege, that Bailey was a legal voter in the town of Harpswell. The penalty for double voting is incurred only by one who has the right to vote. This is a part of the offence, and should be alleged in the indictment.

*Bridges,* Attorney General, for the State.

The law only requires, that the indictment should allege,

that the meeting was convened according to law. The manner in which it is called is but a mere matter of evidence.

The language of the statute is made use of in the indictment, and that is sufficient.

The record of the proceedings in calling the meeting, is not only legal evidence, but the best and only legal evidence. But when it is shown that the defendant was present and voted, it is too late for him to object that the meeting was not legally called. *Ford* v. *Clough,* 8 Maine R. 334 ; *Bucksport* v. *Spofford,* 12 Maine R. 487 ; *Cottrill* v. *Myrick,* ib. 222.

A person must appear of record to be the prosecutor, or he is not entitled to any part of the penalty. But there was no evidence, that he caused the complaint to be made. The mere fact of his being a witness, or even signing a complaint, does not give one a portion of the penalty. *Comm.* v. *Frost,* 5 Mass. R. 53.

When the offence was once committed, the selectmen could do nothing which would pardon it. It became wholly immaterial what became of the votes.

The statute requirement to keep a check list, is merely directory on the selectmen, and their neglect is no excuse for the misconduct of others.

The indictment does allege that Bailey was a legal voter. But if it had not, it alleges that he was there and actually voted twice, and the jury would be authorized to infer that he was a voter.

The opinion of the Court was drawn up by

Tenney J. — The two first objections, relied upon by the defendants' counsel, are to the indictment. It is contended, that it should contain the allegation, that the inhabitants were summoned by warrant from the selectmen, duly and legally served upon them, &c. This part of the indictment has no other connection with the acts of the defendant, which constitute the offence charged, than that there was such an occasion, as rendered those acts criminal, when under other circumstances they would have been in violation of no law ; and it is

believed that a general charge, sufficiently broad to embrace the proof necessary to render the meeting legal, is all which can be required.

It is alleged, that on the day named, the male inhabitants and legal voters were convened according to the constitution and laws of the State in legal town meeting for the choice of town officers. We can conceive of no benefit, which the defendant could derive by a detail of all the steps taken to make the meeting legal. The record was the only proper evidence on this point, and it could not be contradicted. No rebutting evidence could be adduced. It has not been required in cases which bear some analogy to the one before us. In indictments against towns for defects in highways, a general charge, that the highway complained of, was legally such, is sufficient. If the proof had failed to sustain this allegation, the accused would have had the advantage of the defect.

The second objection is equally without foundation. No statute requires that the warning should be in the mode contended for, nor is it essential to the legality of the meeting. The voters of the town were legally assembled, though the warrant was in the form in which from the indictment, we may suppose it; hence an allegation of that which is not required to be in the warrant, is unnecessary. The charge in this part of the indictment embraces every thing material. The meeting being legal, the citizens had full opportunity of exercising their rights, and the statute under which this bill was found, was intended to guard them against an invasion of those rights.

The objection to the proof offered, that the warrant itself and not the record thereof should have been introduced, is not sustained. The warrant was one of the documents from which the record was made, but it is the record itself made perfect from all the necessary materials by the sworn officer appointed for the purpose, and having the official certificate, which is the proper evidence. This only is the record, and this is the only evidence legally admissible, where from the nature of the case, it is presumed to exist. Nothing short of this can be treated as evidence, unless allowed by special legislative enact-

ments, and it cannot be controled by that which is of an inferior character.

It is insisted that the witness relied upon, to support the charge, by appearing voluntarily before the grand jury, was to be deemed the complainant, and that therefore he was incompetent, because a moiety of the pecuniary penalty belongs to him. Was he the complainant in the sense contemplated in the statute? Is every witness who may testify before that body, without being called on in the mode pointed out, by which witnesses are compelled to appear and give testimony, to be treated as complainants? It is apprehended, that there must be some record, touching the charge, which admits of no dispute, that the one entitled to the half of the penalty is the complainant; he must be such throughout. One cannot be a complainant at one stage of the proceedings and cease to be such at another. If one make complaint before a magistrate, obtain a warrant, and on the examination before him the accused is recognised to appear at a higher tribunal, and another appears before the grand jury *voluntarily*, and gives testimony, which of those is the complainant; and in the event of conviction, entitled to a part of the penalty? After conviction and sentence, is the Judge who tried the case to hear testimony, in order to ascertain who is the one entitled thereto? We are of the opinion, that this claim should be settled by the same species of evidence, which shows that a charge was made and a conviction followed thereon. *Comm.* v. *Frost,* 5 Mass. R. 53.

Our statute requires that there should be a list of witnesses in each case filed with the clerk. This may be regarded as a record; but it is not required that this list should be accompanied by a statement of the character of each, whether complainant or not; whether a witness appeared before the grand jury or in court voluntarily or not; and therefore we do not perceive that this can lead to any unerring conclusion. We find no record that the witness relied upon by the government's attorney, in this case, was the complainant. We are not to suppose there was any preliminary examination, in the absence of

proof thereof; and the indictment is silent as to any one except the State, as being interested in the penalty.

It is contended, that the omission of the presiding officer at the meeting to keep a check list, renders the proceedings illegal and void. There is no express requirement, that a check list shall be kept at such a meeting. No person can vote, till the presiding officer has had opportunity to ascertain, that his name is upon the list, and to check the same. This would seem to be a provision, intended to prevent from voting those whose right may be thought doubtful by the presiding officer. But if the one who should preside in the meeting, were to fail to keep a list, we are not satisfied, that this would render void the whole proceedings, disfranchise the town, and deprive all its citizens of their municipal rights. Neither do we think the means taken by the moderator to prevent the effect of the wrongful act of the defendant can avail him. It was sufficient that the meeting was legal, and the balloting properly commenced, and so continued till the two votes were deposited in the box by the defendant; and even if the conduct of the officer presiding was afterwards unwarranted by law, it would not exonerate him from the act committed in violation of the statute.

The defendant moves in arrest of judgment, and founds his motion upon the want of any allegation in the indictment, that he was an elector in the town of Harpswell. This prosecution is under the statute of 1821, ch. 115, sec. 16. The language is, "If any person at any meeting for the choice of town officers shall knowingly give in more than one vote," &c. The terms are different from those used in the tenth section of the same chapter in relation to the choice of State officers, and will embrace one not an elector of the town. The meaning of the Legislature cannot be mistaken; the language is clear and unequivocal, and will apply to one not an elector of the town as well as to one who is such. We cannot think that it was intended, that he should escape the penalty for putting in two votes, although an uncertainty may exist, whether he had the right to vote at all.

*The exceptions and motion are overruled.*